**FILED**

JUN 2 6 2001

LARRY W. PROPES, CLERK
COLUMBIA, S. C.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| The Saxon Group, Inc., ) | C.A. No. 1:01-333-22 |
| ) | |
| Plaintiff, ) | |
| ) | ENTERED |
| v. ) | **ORDER**  6-26-01 |
| ) | |
| Duke Energy, Inc., Duke Capital ) | |
| Corporation, Duke Project Services Group, ) | |
| Inc., Duke Project Services, Inc., ) | |
| Fluor Daniel, Inc., and Duke/Fluor Daniel, ) | |
| ) | |
| Defendants. ) | |



Plaintiff, a disappointed bidder on a project to construct a generator for an electrical power plant in Attalla, Mississippi, brings this action complaining about the manner in which Defendant Duke/Fluor Daniel, the general contractor on the project, conducted the bidding. Plaintiff's Amended Complaint asserts eight causes of action based on: (1) The Racketeer Influence Corrupt Organization Act (RICO), 18 U.S.C. § 1962; (2) fraud and fraudulent inducement; (3) breach of contract accompanied by fraud; (4) civil conspiracy; (5) constructive fraud; (6) gross negligence and grossly negligent misrepresentation; (7) negligent misrepresentation; and (8) promissory estoppel. The matter is before the court on: (1) Plaintiff's Motion to Dismiss as to certain Defendants filed March 12, 2001, which is unopposed by Defendants; and (2) Defendants' Motion to Dismiss or to Transfer Venue under 28 U.S.C. § 1406(a), or, in the alternative, under 28 U.S.C. § 1404(a).

Defendants filed their motion on February 22, 2001, and Plaintiff responded on March 12, 2001. Defendants filed a Reply on March 12, 2001. With Defendants' consent, the court granted Plaintiff's request to conduct additional discovery, and to supplement its opposition. Defendants were given the same right to supplement their briefs. On May 14, 2001, supplemental briefs were filed. The court has reviewed the complete record in this matter, including the pleadings, answers to Local Rule interrogatories, briefs and all accompanying exhibits. The court has reviewed the applicable law. For

AO 72A
(Rev.8/82)

the reasons given below, the court finds that Defendants' Motion to Dismiss or to Transfer Venue should be GRANTED IN PART and DENIED IN PART. The court declines to dismiss Plaintiff's claims, but finds that venue in this action should be transferred to the Western District of North Carolina.

As a preliminary matter the court addresses Plaintiff's Motion To Dismiss Without Prejudice Defendants Duke Capital Corporation, Duke Project Services Group, Inc. and Duke Project Services, Inc. It appears from the affidavit of J. Martin Harvey, Plaintiff's counsel, that these Defendants were joined in this litigation out of an abundance of caution. However, these Defendants are not principals of Duke/Fluor Daniel and Plaintiff has, therefore, moved to dismiss them. Defendants have not opposed Plaintiff's motion. IT IS ORDERED that Plaintiff's Motion to Dismiss filed March 12, 2001, is GRANTED. Plaintiff's claims against Defendants Duke Capital Corporation, Duke Project Services Group, Inc. and Duke Project Services, Inc. are DISMISSED WITHOUT PREJUDICE.



## I. FACTUAL BACKGROUND

Plaintiff is a Georgia corporation that constructs industrial factories, particularly electrical power generating stations. Defendant Duke Energy, Inc., correctly identified as Duke Energy Corporation, is a North Carolina corporation with its principal place of business in North Carolina. It is also registered to do business in South Carolina. Defendant Fluor Daniel, Inc., correctly identified as Fluor Enterprises, Inc., is a California corporation with its principal place of business in California. Defendant Duke/Fluor Daniel ("D/FD"), is a partnership with its principal place of business in North Carolina. Its partners include Duke Project Services, Inc. and Fluor Daniel Illinois, Inc., a Delaware corporation with its principal place of business in California.

Plaintiff's Amended Complaint alleges that in February 2000, it became involved in the bidding for erection of heat recovery steam generators at an Attalla, Mississippi, electrical power construction project for which D/FD acted as general contractor. Plaintiff alleges that it attended pre-bid meetings with D/FD in Mississippi and Texas. Plaintiff alleges that at the Houston, Texas, meeting D/FD's

representative, Susan Flock, specifically denied to Plaintiff that D/FD had any intention of performing the proposed work itself. Plaintiff alleges that it was the lowest bidder on the project and that Defendant's representatives lead it to believe that it would be awarded the contract, pending Plaintiff's satisfaction of an outstanding claim made against it by a subcontractor in Maine. Plaintiff alleges that in reliance on D/FD's representations, it paid the Maine subcontractor $300,000, on May 31, 2000. In reliance on D/FD's statements, Plaintiff alleges that on June 1, 2001, it sent its representatives and equipment to Mississippi to begin work. However, on June 5, 2000, D/FD sent Plaintiff a letter indicating that it was withdrawing its Request for Quotation (RFQ) on the Attalla project. Plaintiff alleges that D/FD performed the work itself. Plaintiff further alleges that thereafter D/FD "blacklisted" Plaintiff from other contracts, causing it damages in excess of ten million dollars.

D/FD's Answer admits that Plaintiff participated in the bid process and that it attended several meetings with Plaintiff's representatives. If further admits that Plaintiff was the lowest bidder for that part of the project. D/FD also admits that it sent the June 5, 2000, letter to Plaintiff withdrawing the Request for Quotation (RFQ), and that it performed the work itself. However, D/FD contends it was authorized to withdraw the RFQ under Article 7.0 of the "Instructions to Bidders" section of the RFQ, which provided:

> Company and/or Owner reserve the right to accept other than the lowest proposal and to accept or reject any proposal in whole or in part, or to reject all proposals with or without notice or reasons, and if no proposal is accepted, to abandon the Work or to have the Work performed in such other manner as Company may elect.

## II. MOTION TO DISMISS OR TO TRANSFER VENUE UNDER 28 U.S.C. § 1406(a)

Defendants' February 22, 2001, motion to dismiss under § 1406(a) is based on the argument that the court does not possess personal jurisdiction over some of the defendants named in this action. Specifically, Defendants claim that Defendants Duke Capital Corporation and Duke Project Services,

Group, Inc., have insufficient contacts in South Carolina for this court to exercise jurisdiction over them. On March 12, 2001, Plaintiff moved to dismiss the two above-named Defendants, as well as Defendant Duke Project Services, Inc. Defendants have not opposed Plaintiff's motion. Therefore, the court has granted Plaintiff's Motion to Dismiss, thus mooting Defendants' arguments that no personal jurisdiction exists over certain of Defendants.

The only Defendants remaining are Duke Energy, Inc., Fluor Daniel, Inc. and D/FD The question remains, however, whether venue is proper in this district.

Jurisdiction in this action is based, in part, on federal question, 28 U.S.C. § 1331. RICO claims, such as those included in Plaintiff's Complaint, are subject to a special venue provision of 18 U.S.C. § 1965(a). It provides that:

> Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person *resides, is found, has an agent, or transacts his affairs.*



18 U.S.C. § 1965(a) (emphasis added). This special RICO venue provision is not intended to be exclusive, but is intended to liberalize existing venue provisions. *Van Schaick v. Church of Scientology of Calif., Inc.,* 535 F. Supp. 1125 (D.Mass. 1982).[1] For a corporate defendant in a private action under RICO, the defendant is "found" within the meaning of § 1985 where it is present in the district by its officers and agents carrying on the business of the corporation. *Id.* At least one court has interpreted the phrase "transacts his affairs" to require that the defendant must be currently transacting business in that district at the time the Complaint is filed. *Medoil Corp. v. Clark,* 753 F. Supp. 592 (W.D.N.C. 1990). *See also Miller Brewing Co. v. Landau,* 616 F. Supp. 1285 (E.D.Wis. 1985) (defendant "transacts his affairs" within district when he has regularly conducted business of substantial and continuous

---

[1]Thus, if venue is satisfied under the test of 18 U.S.C. § 1965(a), it is immaterial whether venue is proper under the more restrictive test of 28 U.S.C. § 1391(b). *See Medoil Corp. v. Clark,* 753 F.Supp. 592 (W.D.N.C. 1990).

character within the district). The doctrine of pendent venue applies to any state law claims that arise out of the same nucleus of operative facts as the RICO claims. *See VMS/PCA Ltd. Partnership v. PCA Partners Ltd. Partnership*, 727 F. Supp. 1167 (N.D.Ill. 1989). Here, the RICO and state law claims are based on the same underlying facts.

The evidence is overwhelming that all three remaining Defendants maintain contacts in South Carolina sufficient to satisfy § 1965(a). As to Defendant Duke Energy Corporation,[2] Plaintiff's Amended Complaint alleges that it is a North Carolina corporation which regularly transacts business in South Carolina. Duke Energy's February 12, 2001, Answer admits it is a North Carolina corporation with its principal place of business in Charlotte, North Carolina, but which is registered to do business in South Carolina. It appears undisputed that Duke Energy provides electricity service to most of upstate South Carolina. The type of continuous and systematic contacts in the state maintained by a utility demonstrate to the court that Duke Energy transacts business within South Carolina within the meaning of § 1965(a).



As to Defendant Fluor Daniel, Inc., Plaintiff's Amended Complaint alleges that it is a citizen and resident of South Carolina with corporate offices in Greenville, South Carolina. Fluor Daniel's Answer admits that it has an office in Greenville, South Carolina. Fluor Daniel appears to be the successor in interest to Daniel International, Inc., which was headquartered in Greenville, South Carolina, before its acquisition in the 1970s by the Fluor Corporation. The court finds that by its maintenance of corporate offices in Greenville, South Carolina, Defendant Fluor Daniel is found, has an agent, and transacts business in South Carolina.

As to Defendant D/FD, Plaintiff's Amended Complaint alleges that it is a joint venture of Fluor Daniel, Inc. and Duke Energy, and that it transacts business in South Carolina. The Affidavit of Michael Giardina, filed February 22, 2001, establishes that D/FD is a North Carolina partnership with its

---

[2]The Affidavit of Edward M. Marsh, Jr. establishes the proper corporate name is "Duke Energy Corporation," not "Duke Energy, Inc." as designated in Plaintiff's Amended Complaint.

principal place of business in Charlotte, North Carolina. An affidavit of Jerry Kelly, Site Manager for D/FD, establishes that Mr. Kelly currently works on a D/FD project in Beech Island, South Carolina. Because D/FD has agents in South Carolina, the test of § 1965(a) is satisfied with respect to this Defendant as well.

Based on the above, the court finds that venue in this District is proper in this RICO case against Defendants Duke Energy Corporation, Fluor Daniel, Inc. and D/FD. Therefore, Defendant's Motion to Dismiss or Transfer under 28 U.S.C. § 1406(a) (improper venue) is DENIED.

### III. MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

In the alternative to their motion under § 1406(a), Defendants argue that for the convenience of the parties and witnesses, and in the interests of justice, the court should transfer this case to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a). Title 28 U.S.C. § 1404(a), provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In transferring a case to another federal district under § 1404(a), the court acts with considerably more discretion than it would have in deciding to dismiss a case on the grounds of common law *forum non conveniens*. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). This is because an order transferring an action from one district court to another does not end the action but preserves it as against the running of the statute of limitations and for all other purposes. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955).

The same factors that the court considers in deciding a common law *forum non conveniens* dismissal also apply to the analysis for a § 1404(a) transfer to another district court. *Id.* at 32. Motions to transfer under § 1404(a) are guided by individualized, case-by-case considerations of convenience and fairness. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). The Supreme Court has isolated those factors to be considered in a *forum non conveniens* analysis. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947); *Koster v. American Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947). Those factors generally

fall into two groups: (1) those relating to the convenience of the litigants, described as "private" factors, which include the plaintiff's choice of forum, convenience of parties and material witnesses, place of the alleged wrong, location of counsel, cost of obtaining the attendance of witnesses and availability of compulsory process, accessibility and location of sources of proof, and possibility of delay or prejudice if transfer is granted, and (2) those factors relating to the public interest in the fair and efficient administration of justice, described as "public" factors, including the administrative difficulties caused by court congestion, the local interest in adjudicating local disputes, the unfairness of burdening citizens in an unrelated forum with jury duty, and the avoidance of unnecessary problems in conflict of law. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp.2d 757, 771 (E.D. Tex. 2000). The party seeking the transfer of venue bears the burden of demonstrating that the court should, in its sound discretion, transfer the action. *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989).

In applying the preceding private and public factors to the case at hand, the record is compelling that a transfer of this case to the Western District of North Carolina serves the convenience of the parties and witnesses, and is in the interests of justice. Although a plaintiff's choice of forum is not to be lightly disturbed, *Benett v. Bally Mfg. Corp.*, 785 F. Supp. 559 (D.S.C. 1992), where, as here, the plaintiff is not a citizen and resident of the forum district and the forum has no discernible connection to the controversy, the plaintiff's choice of forum is accorded little weight. *See Mims v. Proctor & Gamble Distributing Co.*, 257 F. Supp. 648 (D.S.C. 1966). Here, Plaintiff is headquartered in Suwanee, Georgia. Several of Plaintiff's representatives will have to travel to court for the trial of this matter, irrespective of whether trial is conducted in this district or the Western District of North Carolina. The difference in distance between traveling to Aiken, South Carolina versus Charlotte, North Carolina is minimal, approximately 25 miles. Moreover, Plaintiff already maintains an office in Charlotte. Two of the three remaining Defendants are located in Charlotte and one is located in California. Overall, Charlotte is a demonstrably more accessible forum.

AO 72A
(Rev.8/82)

Despite Plaintiff's valiant efforts to demonstrate a nexus between the underlying facts of this litigation and South Carolina, its proof of a nexus falls short. Plaintiff hinges its proof of the nexus on the sending of one e-mail forwarded to a few D/FD employees in Greenville. The court finds Plaintiff has overstated the significance of the e-mail and that the e-mail itself did not "blacklist" Plaintiff from further projects, but simply advised that Plaintiff had been placed on a "Warning List" until such time as it could comply with certain practice guidelines. This is a far cry from the type of banishment Plaintiff claims. Moreover, the affidavits of D/FD employees who received the e-mail unanimously attest that they took no action affecting Plaintiff's interests as a result of the e-mail, further eroding the significance of the e-mail to a South Carolina forum.

The court observes that Plaintiff and D/FD are not strangers to North Carolina litigation. The two are already embroiled in litigation in a Charlotte forum. Plaintiff and D/FD are currently in an arbitration proceeding over Plaintiff's contract to install two heat recovery steam generators at a power plant in Veazie, Maine. D/FD had commenced that action against Saxon in state court in Mecklenburg County, North Carolina. Thereafter, it was removed by Saxon, and was ultimately compelled to arbitration in Charlotte by United States District Judge Graham C. Mullen. *Duke/Fluor Daniel v. The Saxon Group*, C.A. No. 3:00CV418-MU (W.D.N.C.), order entered 11/15/00.

None of Plaintiff's material witnesses in this case reside in South Carolina. Two witnesses, J.B. Smith, III, and Dana Donnelly, are Georgia residents, and the third, James K. Short, resides in a suburb of Charlotte. None of Defendants' material witnesses reside in South Carolina, and several, including Ron Barnes, Jerry Burton, Tom DeHart, and Robert E. Hall, are in Charlotte. Defendants' remaining witnesses hail from around the world, requiring them to travel considerable distance irrespective of whether the trial forum is in Charlotte or Aiken. The court notes that Charlotte, North Carolina, airport is a major international hub, whereas Aiken has no large airport. Rather, international passengers must fly into Atlanta, Georgia, or Columbia, South Carolina, prolonging the trip.

The affidavit of Michael Giardina, filed February 22, 2001, demonstrates that copies of all documents relating to the bidding for erection of the heat recovery steam generator at the Mississippi project are maintained in Charlotte, North Carolina. Construction of these documents will be key to resolution of this case, because Defendants rely on certain "Instructions to Bidders" as justification for their withdrawal of the RFQ and decision to perform the work.

As to the public factors, the court finds that transfer to Charlotte will not delay resolution of this case because the North Carolina federal district court is current with its docket. The court also finds that South Carolina citizens have little local interest in adjudicating a dispute between out of state corporations over a contract affecting a Mississippi power plant. After carefully considering the facts in this case, and according due consideration to the private and public factors, the court concludes that this controversy can be more appropriately and conveniently resolved in Charlotte, North Carolina. Accordingly, Defendants' § 1404(a) motion is GRANTED.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion to Dismiss Defendants Duke Capital Corporation, Duke Project Services Group, Inc. and Duke Project Services, Inc. is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss or Transfer for Improper Venue under 28 U.S.C. § 1406(a) is DENIED, but is GRANTED as to Defendants' Motion to Transfer under 28 U.S.C. § 1404(a). The Clerk of Court will transfer this case to the Western District of North Carolina, Charlotte Division.

IT IS SO ORDERED.

CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 25, 2001

AO 72A
(Rev.8/82)